UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RUFUS L. SPEARMAN,

        Plaintiff,

v.

STATE OF MICHIGAN et al.,

        Defendants.
_____/

Case No. 1:18-cv-463

Honorable Janet T. Neff

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initially filed this action in the United States District Court for the Eastern District of Michigan. That court granted Plaintiff *in forma pauperis* status and then ordered the complaint served on all Defendants. Defendants responded with a motion to transfer venue to this Court. In the report and recommendation recommending the transfer, Magistrate Judge Patricia T. Morris acknowledged that service had been ordered erroneously in that the order was entered prior to the screening required by 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint on grounds of immunity or for failure to state a claim against Defendants State of Michigan, MDOC, Stoddard, Napel, Woods, Bauman, and Place.

## Discussion

### I.     Factual allegations

On September 22, 2000, the Wayne County Circuit Court sentenced Plaintiff to life imprisonment for first-degree murder. He is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.

Plaintiff is suing the State of Michigan, the MDOC, MDOC Correctional Facilities Administration (CFA) Deputy Director Thomas Finco, MDOC CFA Special Activities Coordinator David M. Leach, Unknown Parties (identified as the members of the Chaplaincy Advisory Council[1]), Carson City Correctional Facility (DRF) Warden Cathleen Stoddard, Marquette Branch Prison (MBP) Warden Robert Napel, Chippewa Correctional Facility (URF) Warden Jeffrey Woods, Alger Correctional Facility (LMF) Warden Catherine S. Bauman, and Baraga Correctional Facility (AMF) Warden Shane Place. Plaintiff is suing these Defendants for their role in failing to recognize his religion—the Science of Nuwaubu—and for burdening his exercise of that religion. Specifically, Plaintiff claims that Defendants have: (1) refused to recognize the Science of Nuwaubu religion and thereby denied Nuwaubians the benefits and privileges afforded to other religious groups; (2) denied Plaintiff a religious diet; (3) denied

---

[1] According to MDOC Policy Directive 05.03.150 (eff. 9/15/2015): "A Chaplaincy Advisory Council (CAC) comprised of representatives of various faiths and denominations, serves in an advisory capacity to the Department regarding religious policy and programming. The CFA Special Activities Coordinator shall be a member of the CAC and ensure that all major religions are represented. Organization and membership of the CAC is governed by its constitution and bylaws. The CAC constitution and bylaws shall not conflict with any Department policy or procedure and are subject to the approval of the Deputy Director."

Plaintiff primary religious literature; (4) and refused to permit Plaintiff to participate in the Ramadan fast. (Am. Compl., ECF No. 12, PageID.47.)

Plaintiff's amended complaint tracks his efforts to exercise his religion beginning in June of 2013 while he was incarcerated at LMF. On June 19, 2013, he wrote LMF Chaplain J. Kent requesting institutional purchase of Nuwaubu primary religious materials through the Prisoner Benefit Fund (PBF). (*Id.*, PageID.51.) On June 20, 2013, Chaplain Kent responded, informing Plaintiff that only religious groups recognized by the MDOC and authorized to conduct group religious services were entitled to PBF funding. (June 20, 2013 Memo., ECF No. 12, PageID.131.) Chaplain Kent's response to Plaintiff's request was entirely consistent with the relevant MDOC policy directives.

MDOC Policy Directive 05.03.150 spells out the benefits of religious group recognition:

> The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess . . . . Attachment A identifies those religious groups recognized by the Department that are authorized to conduct group religious services and attend group religious activities as well as all authorized personal religious property members of that religious group may possess. Attachment B identifies those religious groups recognized by the Department that are not authorized to conduct group religious services or attend group religious services but whose members are authorized to possess personal religious property. Prisoners are allowed to possess personal religious reading material of any religion as set forth in Paragraph II.

MDOC Policy Directive 05.03.150 (eff. 9/15/2015) ¶ I.[2] The Nuwaubu religion is not recognized by the MDOC. The MDOC has set up the following process to recognize religions:

> A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a

---

[2] Recognition also makes a religious group eligible for office supplies and materials paid for by the Prisoner Benefit Fund if authorized by the PBF Committee. MDOC Policy Directive 04.02.110 (eff. 11/1/2017) ¶ E.1.

3

written request to the Warden or designee. The request shall include information regarding the group's religious beliefs and practices. The Warden shall ensure all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. The CFA Special Activities Coordinator shall forward his/her recommendation, and that of the CAC if applicable, to the Deputy Director for a final determination.

The Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition, and if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security threat. The decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Assistant Deputy Directors (ADD) and Wardens shall be advised of the final decision.

*Id.*, ¶¶ K, L.

With regard to reading material the directive further provides: "Prisoners are allowed to receive religious reading material through the mail and from the institutional Chaplain. . . includ[ing] reading materials about a religious group not granted recognition by the Department." *Id.*, ¶ HH.

With regard to religious diets, the policy directive provides:

The Department offers a vegan menu to meet the religious dietary needs of prisoners . . . . The Vegan menu shall comply with Kosher and Halal religious tenets. A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals."

A prisoner may eat from a Vegan menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only if it is necessary to the

practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs. To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden or designee of the decision. The Warden shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

\* \* \*

[P]risoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups. A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee, which shall include information regarding the religion's beliefs and practices. The Warden or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

*Id.*, ¶¶ OO, PP, WW.

Several months later, while Plaintiff was incarcerated at DRF, he raised the issue with Chaplain Susan Cleveland. He asked her to help him acquire religious reading materials and to authorize religious meals.[3] Chaplain Cleveland commenced the process; however, based on her internet research[4], informed Plaintiff that his request would likely be denied. During May of 2014,

---

[3] It is difficult to determine the precise nature of Plaintiff's religious meal request. In some instances it appears he is seeking approval to eat the vegan diet for religious reasons. In other instances it appears he is seeking an alternative to the normal vegan diet for religious reasons.

[4] The Nuwaubian religion does not appear to have many adherents. Its founder and leader Dwight York is serving a sentence of 135 years in the custody of the Federal Bureau of Prisons for federal crimes including racketeering and Mann Act violations where the unlawful sexual activity was child molestation. *See, e.g., United States v. York*, No. 5:02-cr-27 (M.D. Ga.) (Am. Mot. to Vacate, Doc. 384).

5

Chaplain Cleveland informed Plaintiff that his requests had, as Chaplain Cleveland predicted, been denied by the CFA.

Plaintiff then raised the issues, "an alternative vegan menu . . . and Department recognition of the Nuwaubu religion ,"directly with CFA Deputy Director Finco. (5/26/2014 Corr., ECF No. 12, PageID.137-143.) CFA Special Activities Coordinator Leach responded to the letter directing Plaintiff to follow the procedure specified in the policy directive. (6/11/2014 Corr., ECF No. 12, PageID.145.) Accordingly, Plaintiff returned to Chaplain Cleveland.[5]

Chaplain Cleveland again interviewed Plaintiff. She considered his request first as if he were asking for an alternative to the vegan menu. Based on Plaintiff's statements and her research into the dietary requirements of the Nuwaubu religion, Chaplain Cleveland concluded that Plaintiff was not entitled to an alternative to the vegan menu because the vegan menu appeared to satisfy the requirements of Plaintiff's religion. (7/7/2014 Mem., ECF No. 12, PageID.147-148.) Chaplain Cleveland then considered Plaintiff's request as if he were simply asking for the vegan menu. She concluded that he had already asked for that religious accommodation and that CFA had denied his request. (*Id*.) By policy directive, therefore, Plaintiff was not permitted to ask again until May 5, 2015. (*Id*.) Chaplain Cleveland's analysis was merely a recommendation.

---

[5] During June and July of 2014, Plaintiff also sought another religious diet accommodation. He asked to participate in the Ramadan fast. *See* (Prisoner Grievances, ECF No. 12, PageID.77-83.) Plaintiff indicates that Nuwaubians follow and observe the Muslim practice of the Ramadan fast. (*Id*., PageID.82.) Plaintiff was not permitted to participate in the fast based on the CFA Special Activities Coordinator's May 7, 2014, memo limiting eligibility to participate in the Ramadan fast to "'prisoners . . . whose religious designation . . . is Muslim, Moorish Science Temple of America, or the Nation of Islam.'" (*Id*., PageID.79.) Although Plaintiff grieved the denial of the Ramadan fast, it does not appear he submitted a written request to participate after he was informed that he was not approved per the May 7, 2014 memo. MDOC Policy Directive 05.03.150 (Eff. 9/15/2015) ¶ WW. Plaintiff renewed his request to participate in the Ramadan fast two years later after he had been transferred to AMF. (Prisoner Grievances, ECF No. 12, PageID.104-106.) Once again, however, it appears that Plaintiff raised the issue only with the chaplain and, after he was informed that he was not eligible, he did not thereafter seek approval by submitting a request to the warden. 5/18/2016 Mem., ECF No. 12-1, PageID.205.)

Plaintiff wrote Warden Stoddard challenging Chaplain Cleveland's recommendation. It does not appear that Plaintiff waited for a response, because he also wrote to CFA Deputy Director Finco asking for recognition of the Nuwaubu religion. CFA Special Activities Coordinator Leach responded that Plaintiff should direct the request to the warden first. (8/20/2014 Resp. to Prisoner Corres., ECF No. 12, PageID.160.) Plaintiff alleges that he wanted recognition for the Nuwaubu religion; however, he did not request group religious services because, as far as he knew, he was the only Nuwaubian in the custody of the MDOC. (Am. Compl., ECF No. 12, PageID.55.)

Plaintiff was then transferred to MBP where he again commenced his quest for recognition. Plaintiff first wrote to the MBP chaplain asking for help in acquiring religious texts and recording his Nuwaubian religion on his file. Chaplain Frisk's response provided Plaintiff a copy of the religious vendor list so Plaintiff could obtain religious texts and informed Plaintiff that his religious preference was at that time recorded as "No preference." (9/3/2014 Mem., ECF No. 12, PageID.162.) Accordingly, Petitioner asked for the form to change his preference to Nuwaubu. By correspondence to MBP Warden Napel, he again sought MDOC recognition of that religion. (4/9/2015 Corresp., ECF No. 12-1, PageID.167-173.)

A month later, after Plaintiff was transferred to URF, he sent a similar letter to URF Warden Woods. (5/2/2015 Corresp., ECF No. 12-1, PageID.174-179.) Two months thereafter, after Plaintiff was transferred to LMF, he sent a similar letter to LMF Warden Bauman. (7/10/2015 Corresp., ECF No. 12-1, PageID.186-191.) Six months later, after Plaintiff was transferred to AMF, he sent a similar letter to AMF Warden Place. (1/24/2016 Corresp., ECF No. 12-1, PageID.194-200.)

While Plaintiff was at AMF, he again requested the religious diet and primary religious materials. (Prisoner kite, ECF No. 12-1, PageID.201.) On March 10, 2016, Chaplain Snyder informed Plaintiff that he was approved for the religious meal program. (3/10/2016 Mem., ECF No. 12-1, PageID.203.) Because Nuwaubu was not recognized, however, Chaplain Snyder also informed Plaintiff that PBF funds were not available to buy materials. (*Id.*) Chaplain Snyder also noted that it did not appear there were approved vendors that carried Nuwaubu materials. (*Id.*)

Plaintiff contends these Defendants have violated his First Amendment free exercise rights, his Fourteenth Amendment equal protection rights, and his right under 42 U.S.C. § 2000cc-1[6] to be free from substantial burdens on the free exercise of his religion absent compelling governmental interest. Plaintiff seeks a declaration that Defendants have so violated his rights, an injunction compelling Defendants to formally recognize his religion, and compensatory and punitive damages. (Am. Compl., PageID.65-68.)

## II. Immunity

Plaintiff may not maintain a § 1983 action against the State of Michigan or the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous

---

[6] The statutory section is part of the Religious Land Use and Institutionalized Persons Act of 2000 (herein "RLUIPA").

unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

The State of Michigan and the MDOC also enjoy Eleventh Amendment immunity with respect to Plaintiff's claim under RLUIPA. In *Sossamon v. Texas*, 563 U.S. 277, 288 (2011), the Supreme Court squarely held that the provision of RLUIPA creating a private cause of action for violations, and authorizing persons to assert such violations as claims or defenses to obtain "appropriate relief" against the government, did not clearly and unequivocally notify states that, by accepting federal funds, they were waiving their sovereign immunity to suits for money damages under RLUIPA, and did not result in the waiver of a state's immunity from a damages suit by a prisoner whose free exercise rights were allegedly burdened. Congress, by using the phrase "appropriate relief," did not clearly manifest its intent to include damages remedy. *Id.* The State of Michigan and the MDOC, therefore, are immune from suit. Despite that immunity, Plaintiff may seek declaratory and prospective injunctive relief against the state by way of an official-capacity suit against MDOC officials, under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar individual from pursuing declaratory and injunctive relief by way of an official capacity claim against a state official).

Plaintiff's claims against the State of Michigan and the MDOC are properly dismissed on grounds of immunity.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. First Amendment and RLUIPA

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely-held religious beliefs regarding the Science of Nuwaubu. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the

observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water of Church of God v. Charter Tp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Living Water*, 258 F. App'x at 739.

The analysis of Plaintiff's RLUIPA claim parallels, in part, the analysis of his free exercise claim.[7] In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise

---

[7] The Eighth Circuit Court of Appeals has described the similarities and differences between free exercise and RLUIPA claims as follows:

> [W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a "substantial burden" on the prisoner's ability to practice his religion. [*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).] "Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from [ ] RLUIPA." *Id.* If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim. *Id.*

*Gladson v. Iowa Dep't of Corrections*, 551 F.3d 825, 833 (8th Cir. 2009).

is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). Likewise, the Supreme Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 St. Ct. 853, 862 (2015). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in "free exercise" decisions. *Living Water*, 258 F. App'x at 733-34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable").

Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 135 S. Ct. at 862. Moreover, the fact that the petitioner is able to engage in other forms of religious exercise is not relevant to whether the burden is substantial. *Id.*

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Under the First Amendment or under RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Plaintiff's contends that his religious exercise has been substantially burdened in four ways: first, initially the CFA Deputy Director would not approve his participation in the vegan religious diet; second, the memo from the CFA Special Activities Coordinator precluded Plaintiff's participation in the Ramadan fast in 2014 and 2016; third, the MDOC would not provide primary religious texts; and fourth, the CFA Deputy Director would not recognize Plaintiff's religion. With respect to the vegan diet and Ramadan fast issues, Plaintiff has adequately alleged a substantial burden. Essentially, Plaintiff was forced to choose between following the tenets of his religion or being able to eat. For that reason, the MDOC's refusal to recognize the Nuwaubian religion may have substantially burdened Plaintiff's exercise

of that religion to the extent the lack of recognition informed the decisions to deny Plaintiff his religious diet or participation in the Ramadan fast.[8]

The same is not true, however, with respect to the MDOC's refusal to provide primary religious texts. Inmates enjoy no constitutional or legal right to receive religious materials at government expense. *See Cruz v. Beto*, 405 U.S. 319, 323 (1972) (Burger, C.J., concurring); *Frank v. Terrell*, 858 F.2d 1090 (5th Cir. 1998). The fact that Plaintiff might incur some expense to obtain the primary Nuwaubian religious texts does not constitute a substantial burden.

Although Plaintiff has sufficiently alleged his First Amendment and RLUIPA claims with respect to religious diet, the Ramadan fast, and MDOC recognition of the Nuwaubian religion, he has not adequately alleged that each Defendant played a role in the violation. By MDOC policy directive, Defendants Finco and Leach as well as the members of the CAC play a direct role in those decisions. That is not the case with the wardens.

Plaintiff's allegations and the MDOC's policy directive regarding religious beliefs and practices reveal that the wardens played the limited role of passing on to the CFA Plaintiff's requests regarding religious diet and recognition. Plaintiff does not allege that the wardens failed to complete that role. To the contrary, the documents attached to Plaintiff's complaint indicate the wardens fulfilled their obligations. *See, e.g.* (Mem., ECF No. 12-1, PageID.202.) Thus Plaintiff does not allege that the wardens infringed on the free exercise of his religion.

Responding to Plaintiff's grievances and appeals is the only other action taken by the wardens, at least according to Plaintiff's allegations and the documents he attaches to his

---

[8] Because the Nuwaubian religion is still unrecognized but Plaintiff is permitted to participate in his religious diet, it is possible recognition and diet approval were not and are not related. Nonetheless, Plaintiff alleges that they are. Moreover, Plaintiff does not identify any other burden on his religious exercise by virtue of the lack of recognition. He does not identify any religious property he was denied and he specifically disclaims any desire for group religious services.

complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that the wardens engaged in any active unconstitutional behavior. Accordingly, he fails to state a First Amendment free exercise or RLUIPA claim against them.

### B. Fourteenth Amendment Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

16

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Here, Plaintiff alleges that Defendants Finco, Leach, and the members of the CAC have treated Nuwaubians differently than other similarly situated religious persons. At this early stage of the proceedings, Plaintiff's allegations suffice to state a claim. With respect to the wardens, however, Plaintiff's equal protection allegations fail to state a claim for the same reasons his First Amendment and RLUIPA allegations fell short.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants State of Michigan and MDOC will be dismissed on grounds of immunity. Defendants Stoddard, Napel, Woods, Bauman, and Place will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The case will proceed against Defendants Leach and Finco as well as the Unknown Parties identified as the members of the CAC.

An Order consistent with this Opinion will be entered.


Dated:  May 22, 2018                                   /s/ Janet T. Neff
                                                      Janet T. Neff
                                                      United States District Judge